## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BRUCE ROCKWELL**, *on behalf of himself and all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>**MEDICUS HEALTHCARE SOLUTIONS, LLC.**<br><br>*Defendant*. | Civil Case No.: _____<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## <u>INTRODUCTION</u>

1.      This action arises out of Defendant, Medicus Healthcare Solutions, Inc. ("Medicus") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.      Medicus makes, or has made on its behalf, aggressive telemarketing calls soliciting its locum tenens staffing services.

3.      These calls are made to individuals on the National Do-Not-Call Registry.

4.      Medicus continues to make these calls even after the called party requests that Medicus cease calling.

5.      The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

6.      The TCPA also prohibits making telemarketing calls to a person who, like Dr. Rockwell, has previously asked not to receive such calls and makes companies like Medicus liable for calls in violation of the TCPA's internal do-not-call rules.

7.      Accordingly, Plaintiff Bruce Rockwell ("Dr. Rockwell") brings this action on

behalf of himself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9.     This Court has jurisdiction over Medicus because Medicus purposefully availed itself of the privilege of conducting business in New York because it obtained information about Dr. Rockwell, specifically Dr. Rockwell's phone number with New York area code and thus intentionally dialed into the state of New York.

10.    Stated differently, Medicus targeted residents of this District with its illegal telemarketing campaign and had specific knowledge (area code) that these calls were being placed into New York.

11.    Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in and/or was directed from this District.

## PARTIES

12.    Dr. Rockwell is, and at all times mentioned herein was, a citizen and resident of Lakewood, New York.

13.    Dr. Rockwell is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.    Medicus is, and at all times mentioned herein was, a New Hampshire limited liability company.

15.    Medicus has offices located at 22 Roulston Road, Windham, New Hampshire 03087.

16.    Medicus may be served via its registered agent, Joseph Matarese located at 22

Roulston Road, Windham, New Hampshire 03087.

17.     Medicus is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

19.     Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

20.     These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

21.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

22.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

23.     The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

24.     The FCC was instructed to "compare and evaluate alternative methods and

procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

25.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

26.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

27.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

28.     These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

29.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

30.     These policies and procedures prohibit a company from making calls for

telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

31.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

32.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

33.    These requirements are separate but cumulative.  In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations.  A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

---

[1]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

34.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

## FACTUAL ALLEGATIONS

35.     Dr. Rockwell is the user of his personal cellular telephone number (716)-XXX-9110.

36.     Dr. Rockwell's cellular telephone number (716)-XXX-9110 is used for residential purposes and is not associated with a business.

37.     Dr. Rockwell's cellular telephone number (716)-XXX-9110 has been on the National Do-Not-Call Registry since February 15, 2007.

38.     Dr. Rockwell personally placed his cellular telephone number (716)-XXX-9110 on the National Do-Not-Call Registry.

39.     Dr. Rockwell began receiving telephone calls from Medicus soliciting him with Medicus' locum tenens staffing services at least as early as the beginning of 2023.

40.     Medicus seeks to represent physicians and work with them to place them in temporary roles.  Medicus' website[2] describes the process once a physician signs up with Medicus:

---

[2] https://medicushcs.com/physicians-advanced-practitioners (last accessed Jan. 24, 2024).



41.     Medicus offers their clients numerous services, such as job search, curriculum vitae assistance, and licensing, credentialing and travel services.

42.     Medicus recruits potential clients via cold call telemarketing.

43.     Medicus related job reviews on the popular website www.indeed.com[3] admit that Medicus engages in cold calling telemarketing campaigns:

---

[3] https://www.indeed.com/cmp/Medicus-Healthcare-Solutions/reviews (last accessed Jan. 24, 2024).



**3.0**
★★★☆☆

### If you like mindless - mind numbing work and the occasional free drink, this is the job for you!

Recruiter (Former Employee) - Denver, CO - January 17, 2021

Everyday is the exact same. You make tons of phone calls and eventually get someone on the line long enough to make a pitch and they'll most likely say no. You'll keep talking as if you didn't even hear them and they will eventually hang up on you. Its a fun game!

✓ **Pros**
Easy work if you enjoy incredibly boring work

✕ **Cons**
Reliving the same exact day - everyday

Was this review helpful?

Yes 1   No                                                        ⚑ Report   ⬆ Share

**3.0**
★★★☆☆

### Great desk job on the phone making sales calls

LEAD EMERGENCY/HOSPITALIST PHYSICIAN RECRUITER (Former Employee) - Denver, CO - August 13, 2018

Typical day involved making over 150 calls to MDs to set them up with locums positions across the nation. I enjoyed my co-workers and incentives. But the job was demeaning and I struggled to see a way to climb out of the starting position.

✓ **Pros**
company social events, training

✕ **Cons**
cold calls

Was this review helpful?

Yes 2   No                                                        ⚑ Report   ⬆ Share

44.    The calls Dr. Rockwell received came from changing ten-digit numbers.

45.    Dr Rockwell would block the numbers that would call him, yet Medicus would continue to call from different numbers.

46.    On May 23, 2023, Dr. Rockwell received a call from "Steve" on behalf of Medicus soliciting him with locum tenens staffing services.

47.    Dr. Rockwell instructed Steve not to call again and asked Steve to remove his telephone number from Medicus' calling list.

8

48.     On June 14, 2023, Dr. Rockwell received a call from "Larry" on behalf of Medicus soliciting him with locum tenens staffing services.

49.     This call came from (603) 276-3316, a Medicus telephone number.

50.     Dr. Rockwell instructed Larry not to call again and asked Larry to remove his telephone number from Medicus' calling list.

51.     On July 18, 2023, Dr. Rockwell received a call from "Louis" on behalf of Medicus soliciting him with locum tenens staffing services.

52.     This call came from (603) 952-2858, a Medicus telephone number.

53.     Dr. Rockwell did not answer the call, however, Louis left him the following voice mail message:

> Hey Dr. Rockwell.  This is Louis [inaudible] with Medicus Radiology.  Hope all is well. Just calling in to connect with you about some locum opportunities I had in mind for you.  If you could give me a call back at your earliest convenience, that would be awesome.  Just want to talk through some of these opportunities with you.  My number is (603) 952-2858.  Again, (603) 952-2858. Thanks.

54.     Dr. Rockwell called Louis back at the number provided and instructed Louis not to call again and asked Louis to remove his telephone number from Medicus' calling list.

55.     On January 19, 2024, Dr. Rockwell received a call from "Jason Sulmonetti"[4] on behalf of Medicus soliciting him with locum tenens staffing services.

56.     This call came from (603) 328-2161, a Medicus telephone number.

57.     Dr. Rockwell did not answer the call, however, Jason left him the following voice mail message:

> Hey Dr. Rockwell.  This is Jason Sulmonetti with Medicus.  Giving

---

[4] Jason Sulmonetti is the "Team Lead of Physician Recruitment – Radiology."  *See* https://www.linkedin.com/in/jason-sulmonetti-808b4013b/ (last accessed Jan. 24, 2024).

you a quick call. Was hoping to connect today to see if you were at all in the market for locums. This year, I saw on your CV that you had previously worked them and I have a bunch of teleradiology clients looking for extra help. I wanted to see if you might be available to. If so, call me at (603) 328-2161. Hope to hear from you soon. Take care.

58.     Dr. Rockwell called Jason back at the number provided and instructed Jason not to call again and asked Jason to remove his telephone number from Medicus' calling list.

59.     Dr. Rockwell did not provide prior express invitation or permission or consent for these telephone calls.

60.     Medicus' violations were, at a minimum, negligent.

61.     Alternatively, Medicus' violations were willful and knowing because Medicus knew that Dr. Rockwell's telephone number was registered on the national DNC list, and because Plaintiff expressly told Medicus to stop calling him on each of the calls

62.     Dr. Rockwell and the classes were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls.   Their privacy was improperly invaded, Medicus' calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted telephone calls.   Medicus' telephone calls were annoying and a nuisance, and wasted the time of Dr. Rockwell and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

63.     Because Dr. Rockwell and Class Members continued to receive calls from, or on behalf of, Medicus, on their DNC registered numbers, and after they revoked any conceivable

consent, it demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

## MEDICUS'S LIABILITY

64.     Medicus used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

65.     Medicus made two or more telephone solicitations to Dr. Rockwell, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

66.     Accordingly, for violations of 47 C.F.R. § 64.1200(c), Dr. Rockwell is entitled to $500 per call through 47 U.S.C. § 227(c).

67.     Dr. Rockwell is entitled to $1,500 per call if Medicus's actions are found to be knowing or willful.

68.     Medicus, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed "Classes," as defined as follows:

## THE DNC CLASS

Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a

12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

(the "DNC Class")

## THE INTERNAL CLASS

All persons within the United States who, within the four years prior to the filing of the original Complaint through the date of class certification, (1) received two or more calls within any 12-month period, (2) encouraging the purchase of Defendant's property, goods, or services, (3) to said person's residential telephone number, (4) after requesting that Defendant stop calling or making similar request.

(the "Internal DNC Class")

70.     Excluded from the Classes are Medicus and any entities in which Medicus has a controlling interest; Medicus's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

71.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

72.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Medicus and third parties maintain written and electronically stored data showing:

   a.   The time period(s) during which Medicus made the telephone calls;

   b.   The telephone numbers to which Medicus made telephone calls;

   c.   The telephone numbers for which Medicus had prior express written consent;

   d.   The purposes of such telephone calls; and

   e.   The names and addresses of Class members.

73.     The Classes are comprised of hundreds, if not thousands, of individuals.

74.     There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

    a.   Whether Medicus makes telemarketing calls;

    b.   Whether Medicus obtains prior express written consent;

    c.   Whether Medicus makes solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

    d.   Whether Medicus had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and Class Members;

    e.   Whether Medicus 's statutory violations were willful and knowing; and

    f.   Whether Medicus should be enjoined from engaging in such conduct in the future.

75.     Dr. Rockwell is a member of the Classes in that Medicus placed two or more calls for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, while his telephone number was on the National Do-Not-Call Registry.

76.     Dr. Rockwell's claims are typical of the claims of the Members of the Classes in that they arise from Medicus's uniform conduct and are based on the same legal theories as these claims.

77.     Dr. Rockwell and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Medicus's unwanted calls and suffered a nuisance and an invasion of their privacy.

78.     Dr. Rockwell has no interests antagonistic to, or in conflict with, the Classes.

79.     Dr. Rockwell will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

80.     Medicus has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

81.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

82.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

83.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the DNC Class)**

84.     Dr. Rockwell and the proposed Classes incorporate the allegations of paragraphs 1-82 as if fully set forth herein.

85.     Medicus made telephone solicitations to Dr. Rockwell's and putative Class Members' telephone numbers.

86.     Dr. Rockwell's and putative Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

87.     Dr. Rockwell and putative Class Members each received two or more such calls in a 12-month period.

88.     Dr. Rockwell and putative Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

14

89.     Dr. Rockwell and putative Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Dr. Rockwell respectfully requests the Court grant Dr. Rockwell and the Class members relief against Medicus, individually and jointly, as set forth in the Prayer for Relief below.

### COUNT II
### VIOLATIONS OF 47 U.S.C. § 227 and 47 C.F.R. § 64.1200
### (On Behalf of Plaintiff and the Internal DNC Class)

111.     Dr. Rockwell incorporates by reference all the allegations contained in paragraphs 1 through 82 of this Complaint as though fully stated herein.

112.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

**(1)**     *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

**(2)**     *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)**     *Recording, disclosure of do-not-call requests*. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a

reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

*          *          *

**(6)**   ***Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(3),(6).

113.   Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

114. Dr. Rockwell and the Internal DNC Class members made requests to not receive future solicitations.

115. Medicus failed to honor Dr. Rockwell's and the Internal DNC Class members' opt-out requests.

116. As outlined in detail above, Medicus violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honoring opt-out requests.

117. Pursuant to section 227(c)(5) of the TCPA, Dr. Rockwell and the Internal DNC Class members are entitled to an award of $500 in statutory damages, for each call sent by, or an behalf of, Medicus.

118. To the extent Medicus's misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

119. Plaintiff and the Internal DNC Class members also seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

WHEREFORE, Dr. Rockwell respectfully requests the Court grant Dr. Rockwell and the Class members relief against Medicus, individually and jointly, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Class esand appointing their counsel as Class Counsel;

B.    An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages;

E.   An award of treble damages; and

F.   Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** February 7, 2024

By: */s/ Javier L. Merino*
Javier L. Merino, Esq.
DannLaw
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Tel.: (216) 373-0539
Fax: (216) 373-0536
Email: jmerino@DannLaw.com

s/*Max S. Morgan*
Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

*Counsel for Plaintiff and the proposed classes*

(*to seek admission pro hac vice)