UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

BRUCE ROCKWELL, individually and on
behalf of all others similarly situated,

        Plaintiff,

       v.

MEDICUS HEALTHCARE SOLUTIONS,
LLC,

        Defendant.

———————————————————

24-CV-128-LJV
DECISION & ORDER

On February 7, 2024, the plaintiff, Bruce Rockwell, commenced this putative class action under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). The complaint alleges that the defendant, Medicus Healthcare Solutions, LLC ("Medicus"), made multiple unwanted telephone calls to Rockwell in violation of the TCPA. Docket Item 1.

On February 28, 2024, Medicus moved to dismiss the complaint, Docket Item 7; on March 7, 2024, Rockwell responded, Docket Item 10; and on March 14, 2024, Medicus replied, Docket Item 12.

For the reasons that follow, Medicus's motion to dismiss is GRANTED. Rockwell's complaint is dismissed without prejudice to Rockwell filing a motion to amend his complaint, within 30 days of the date of this order, to correct the deficiencies identified below.

**BACKGROUND**[1]

Rockwell is a physician with a personal cellular telephone number that "has been on the National Do-Not-Call Registry since February 15, 2007." Docket Item 1 at ¶¶ 35-37. Beginning in early 2023, Rockwell "began receiving telephone calls from Medicus," a staffing service that "seeks to represent physicians and work with them to place them in temporary roles." *Id.* at ¶¶ 39-40. Rockwell alleges that Medicus recruits its individual clients via "cold call telemarketing" and offers them multiple professional services, such as conducting job searches; curriculum vitae assistance; and licensing, credentialing, and travel services. *Id.* at ¶¶ 41-42.

According to Rockwell, the calls he received from Medicus came from "changing ten-digit numbers." *Id.* at ¶ 44. Despite blocking each number, Medicus continued to call Rockwell from new numbers. *Id.* at ¶ 45. The first call to which Rockwell refers in his complaint occurred on May 23, 2023, when he "received a call from 'Steve' on behalf of Medicus soliciting him with locum tenens[2] staffing services." *Id.* at ¶ 46. Rockwell told Steve not to call him again and to "remove his telephone number from Medicus'[s] calling list." *Id.* at ¶ 47. A few weeks later, on June 14, 2023, Rockwell "received a call from 'Larry' on behalf of Medicus soliciting him with locum tenens

---

[1] In deciding a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). The following facts are taken from the complaint, Docket Item 1.

[2] The parties do not define the term, but "[a] locum tenens physician is one who temporarily fulfills the obligations of another physician." *McGary v. Williamsport Reg. Med. Ctr.*, 775 F. App'x 723, 729 n.8 (3d Cir. 2019).

staffing services."  *Id.* at ¶ 48.  Again, Rockwell said "not to call," and he "asked Larry to remove his telephone number from Medicus'[s] calling list."  *Id.* at ¶ 50.

But according to Rockwell, Medicus's calls did not stop.  On the contrary, about a month after Larry's call, on July 18, 2023, Rockwell "received a call from 'Louis' on behalf of Medicus soliciting him with locum tenens staffing services."  *Id.* at ¶ 51.  "Rockwell did not answer the call," but Louis left him a voicemail message stating that he was "calling in to connect with [Rockwell] about some locum [tenens] opportunities" and asking that Rockwell return his call.  *Id.* at ¶ 53.  "Rockwell called Louis back at the number provided[,] instructed Louis not to call again[,] and asked Louis to remove his telephone number from Medicus'[s] calling list."  *Id.* at ¶ 54.

Finally, on January 19, 2024, an individual named Jason Sulmonetti called Rockwell "on behalf of Medicus" and solicited Rockwell "with locum tenens staffing services."  *Id.* at ¶ 55.   "Rockwell did not answer the call," but Sulmonetti left him a voicemail message asking whether Rockwell was "in the market for locums" and stating that "I have a bunch of teleradiology clients looking for extra help."  *Id.* at ¶ 57.  "Rockwell called [Sulmonetti] back at the number provided[,] . . . instructed [Sulmonetti] not to call again[,] and asked [Sulmonetti] to remove his telephone number from Medicus'[s] calling list."  *Id.* at ¶ 58.

In all, Rockwell received four unwanted telephone calls telling him about locum tenens opportunities from individuals purporting to work for Medicus.  "Rockwell did not provide prior express invitation or permission or consent for these telephone calls."  *Id.* at ¶ 59.  He asserts that "Medicus'[s] violations were, at a minimum, negligent," *id.* at ¶ 60; in the alternative, he says that "Medicus'[s] violations were willful and knowing

because Medicus knew that Dr. Rockwell's telephone number was registered on the

national [do-not-call] list, and because [he] expressly told Medicus to stop calling him on

each of the calls," *id.* at ¶ 61.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.    STATUTORY AND REGULATORY CONTEXT

"Voluminous consumer complaints about abuses of telephone technology—for

example, computerized calls dispatched to private homes—prompted Congress to pass

the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012).

"'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion of

privacy.'" *Id.* at 372 (quoting TCPA 105 Stat. 2394, note following 47 U.S.C. § 227

(Congressional Findings)). The TCPA directed the Federal Communications

Commission ("FCC") to implement regulations "concerning the need to protect

residential telephone subscribers' privacy rights to avoid receiving telephone

solicitations to which they object," 47 U.S.C. § 227(c)(1)-(2), and created a private right

of action for violations.  *See id.* § 227(c)(5).

As relevant here, the TCPA and its implementing regulations prohibit making

more than one solicitation call within a 12-month period to a number listed on a do-not-

call registry provided for by the FCC.  *See id.* (conferring a private right of action on any

"person who has received more than one telephone call within any 12-month period by

or on behalf of the same entity in violation of the regulations prescribed under this

subsection."); 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any

telephone solicitation to . . . [a] residential telephone subscriber who has registered his

or her telephone number on the national do-not-call registry of persons who do not wish

to receive telephone solicitations that is maintained by the [f]ederal [g]overnment.");

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 201 (S.D.N.Y. 2024).  Moreover,

under other FCC regulations, "[n]o person or entity" may "initiate . . . any call for

telemarketing purposes to a residential telephone subscriber unless" the caller "has

instituted procedures for maintaining a list of persons who request not to receive such

calls."  47 C.F.R. § 64.1200(d).[3]  "At minimum, those procedures must include the

maintenance of 'a written policy, available upon demand, for maintaining a do-not-call

list,' and training[] for telemarketers on 'the existence and use of the do-not-call list.'"

*Cacho*, 739 F. Supp. 3d at 202 (quoting 47 C.F.R. § 64.1200(d) (internal citations

omitted)).

---

[3] Section 227(c)'s private right of action extends to violations of section
64.1200(d).  *See Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324-25 (D.
Mass. 2020).

"Telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Along the same lines, "telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* at § 64.1200(f)(13).

"In order to allege a violation of [section 64.1200](d), a plaintiff must show that the entity placing the calls failed to institute the proper procedures prior to the initiation of the call." *Simmons v. Charter Comms., Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016). Do-not-call requests must be honored within 30 days of the request. 47 C.F.R. § 64.1200(d)(3).

## II.    ROCKWELL'S TCPA CLAIMS

Rockwell alleges that Medicus, through its unwanted telephone calls, violated the TCPA and sections 1200 (c) and (d) of its implementing regulations in two ways. More specifically, he says that Medicus (1) called him multiple times in a 12-month period even though his number was listed on the national do-not-call registry, and (2) did not honor the do-not-call requests he made in response to those calls.[4] Docket Item 1 at ¶¶

---

[4] Rockwell does not identify the specific provision of section 1200(d) that Medicus allegedly violated, but the only facts in the complaint relevant to this claim are that the third and fourth calls made by Medicus were made more than 30 days after he asked Medicus not to call him again. Docket Item 1 at ¶¶ 50-57. In other words, Rockwell says nothing about whether Medicus had or failed to follow do-not-call procedures, and he bases his claim solely on the multiple calls themselves. Because, as discussed below, the Court concludes that the calls at issue did not constitute

84-89, 111-19.  Rockwell alleges, and Medicus does not appear to dispute, that

Rockwell received more than one call from Medicus during a 12-month period and that

his telephone number was listed on the national do-not-call registry.  So the question at

the heart of Rockwell's claim is whether or not Medicus's calls constituted "telephone

solicitation[s]" or "telemarketing."

Medicus argues that "the staffing recruiting calls described in the [c]omplaint are

neither 'telephone solicitation' nor 'telemarking' as those terms as defined in the [TCPA]

and its implementing regulations."  Docket Item 7-1 at 1.[5]  Medicus says that because

the calls made to Rockwell were "recruiting calls," they did "not encourage the

'purchase' or 'rental' or 'investment' in 'property' or 'goods' or 'services'" and should not

be considered "telemarketing" or "telephone solicitation."  *Id.* at 5.  In response,

Rockwell says that the "underlying purpose" of the calls from Medicus was to "solicit its

own services"—that is, assisting Rockwell "with finding temporary medical positions and

facilitating the CV, licensing, credentialing, and travel process[es] on his behalf."

Docket Item 10 at 10 (italics omitted); *see also* Docket Item 1 at ¶¶ 39-42.

As Medicus notes in its briefing, Docket Item 7-1 at 5-7, several district courts

have concluded that communications sent for the purpose of job recruitment do not

constitute telemarketing or telephone solicitations.  *See, e.g.*, *Friedman v. Torchmark*

*Corp.*, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013) (concluding that messages

were "intended to inform [p]laintiff of the opportunity to enter into an independent

---

telemarketing, it need not reach the question of whether only those facts, and nothing
more, are sufficient to allege a violation of section 1200(d).

[5] Page numbers in docket citations refer to ECF pagination.

contractor position with [d]efendant" and not "to offer goods or services for sale"); *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994) ("When . . . an employer places a 'help wanted' ad, no one speaks or thinks of it as a property solicitation or an offer of property."); *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1094-97 (N.D. Cal. 2015) (finding that text messages "from Uber seeking to recruit drivers were not attempts to promote a 'good' (its application) to those drivers, but instead [were] attempt[s] to recruit drivers so that those potential drivers could provide services to riders").

Medicus argues that the reasoning of one of those cases, *Gerrard v. Acara Solutions, Inc.*, 469 F. Supp. 3d 96 (W.D.N.Y. 2020), compels the dismissal of Rockwell's complaint. *See* Docket Item 7-1 at 5. In *Gerrard*, the plaintiff alleged that she had received more than 200 text messages from the defendant in a single day, "the majority of which" concerned a job opening with the defendant as a "Material Handler/Production Operator."[6] 469 F. Supp. 3d at 97 (internal quotation marks omitted). Some of those messages advised that if she were interested in that position, the plaintiff should "'call/text Amy' at a certain phone number." *Id.* Reasoning that those messages "merely reference[d] an employment opportunity" and did not "encourage the purchase or rental of, or investment in, any property, goods, or

---

[6] In *Gerrard*, the plaintiff alleged that the defendant was also a staffing and recruiting company sourcing workers for clients that needed employees. 469 F. Supp. 3d at 97 n.3. But the text messages at issue may suggest that the relevant position was with the defendant. *See id.* at 97 ("Specifically, the text messages stated: 'Hi, Superior Group has a job opening for Material Handler/Production Operator at Buffalo Grove, Illinois. Contract position.'" (alterations omitted)). In any event, it is unclear whether the call solicited work with the caller or with one of the caller's clients.

services," the court concluded that the messages did not violate the TCPA. *Id.* at 99

(quoting 47 C.F.R. 64.1200(f)(1) (alterations and internal quotation marks omitted)).

This Court agrees with the analysis in *Gerrard*. As other courts have held,

advising about "an opportunity to earn money does not constitute a [telephone]

solicitation." *See Suescum v. Family First Life, LLC*, 2023 WL 311144, at *2 (M.D. Fla.

Jan. 19, 2023) (citing *Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at

*10 (M.D. Fla. Dec. 31, 2013)). So simply telling someone about a job opportunity,

without more, does not fall within the ambit of the statute.

But there is a nuance that may make Rockwell's complaint different from

*Gerrard*. While the text messages at issue in *Gerrard* may have solicited work with the

caller's own company, the calls from Medicus clearly did not involve job opportunities

with Medicus. Instead, Rockwell had to reach out to Medicus to discuss opportunities

available to him with Medicus's corporate clients. *See* Docket Item 1 at ¶¶ 53, 57. In

other words, the relevant opportunities were not with Medicus but rather through

Medicus, and presumably by which Medicus would earn commissions or fees.

So, drawing all reasonable inferences in favor of Rockwell, Medicus's calls were

not placed simply to alert Rockwell to job opportunities; rather, they were made to

further Medicus's own objectives—namely, providing services to "clients looking for

extra help," *see* Docket Item 1 at ¶ 57, by finding physicians who might want to pursue

opportunities through Medicus. Moreover, Rockwell is correct that "services that appear

to be free or to offer recruitment opportunities may 'serve as a mere pretext for

commercial services.'" *See Suescum,* 2023 WL 311144, at *2 (quoting *Neurocare Inst.

of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014)); *see*

*also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14098-99 (July 3, 2003) ("[A] message that seeks people to help sell or market a business'[s] products[] constitutes an advertisement if the individuals called are encouraged to purchase, rent, or invest in property, goods, or services, during *or after the call*." (emphasis added)).

Indeed, courts have held that messages merely inviting the recipient to learn more about services or professional opportunities can constitute telephone solicitation or telemarketing under the TCPA. *See, e.g.*, *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 916-18 (9th Cir. 2012) (phone call alerting recipient to expiration of his reward points was telephone solicitation when only way to redeem reward points was to purchase goods from defendant); *Risher v. Adecco Inc.*, 2020 WL 13505422, at \*3-4 (N.D. Cal. Feb. 14, 2020) (concluding, in light of defendant's "strenuous[]" arguments that the recipients of job recruitment texts would not become defendant's employees, text messages from defendant discussing open "Refurbisher" role could "be reasonably characterized as soliciting the recipients to utilize [defendant's job placement] services"); *Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 641-43 (S.D. Tex. 2023) (finding that text message offering to purchase home from plaintiff was a pretext to soliciting the plaintiff's payment for defendant's title and escrow services).

But the problem with Rockwell's argument is that, unlike those cases, it is not clear from his complaint how Medicus's supposedly implicit offer of its own professional services fits into its business model. Stated another way, Rockwell does not allege that Medicus would have received anything from Rockwell had Rockwell accepted

10

Medicus's invitation.  And without that allegation, it is hard to see how the calls

encouraged Rockwell to purchase, rent, or invest in any property, goods, or services.

Rockwell tries to remedy that deficiency by saying that Medicus "seeks to

represent" individual physicians in finding staffing opportunities, which includes assisting

them with licensing and travel.  *See* Docket Item 1 at ¶¶ 40-41.  But he does not allege

that these individual physicians are Medicus's customers who pay for those services.

Indeed, the complaint does not allege that Medicus received any payment in connection

with the professional services it provides, either from individual physicians it represents

or from corporate clients in search of staffing.

It is possible that an individual client like Rockwell would pay a fee if he accepted

Medicus's placement for professional services or have a portion of his eventual income

earmarked to cover those services.  But it is equally possible that Medicus receives no

payment for these services and simply uses them as a tool to ensure it has qualified

candidates to place with its corporate clients seeking short-term staffing.  In the

absence of any allegations about the workings of Medicus's business model and the

role that its professional services play in that business model, this Court cannot

conclude that the telephone calls Rockwell received constituted "telemarketing" or

"telephone solicitation" under the TCPA and its implementing regulations.

That being said, Rockwell has requested "at least one opportunity to amend" his

complaint, Docket Item 10 at 13, although he has not provided a proposed amended

complaint.  *See* Loc. R. Civ. P. 15(a)-(b) (requiring "[a] movant seeking to amend . . . a

pleading" to provide "the proposed amended pleading" with the changes identified in

11

redline).  At this point, without a proposed amended complaint, the Court cannot say definitively whether amendment would be futile.

But, mindful of the Second Circuit's strong preference for resolving cases on the merits, *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 190 (2d Cir. 2015), the Court in its discretion will give Rockwell another opportunity by dismissing his claims without prejudice to his moving to amend his complaint to correct the deficiencies outlined above.

## CONCLUSION

For the reasons stated above, Medicus's motion to dismiss Rockwell's complaint, Docket Item 7, is GRANTED.  Rockwell's complaint is dismissed without prejudice to his moving to amend his complaint, within 30 days of the date of this order, to remedy the deficiencies identified above.  Any such motion must attach a proposed redlined amended complaint and a memorandum of law explaining why such amendment is not futile.  If Rockwell does not move to amend his complaint, then the Clerk of the Court shall close the case without further order.

SO ORDERED.

Dated:   March 31, 2025
         Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE